UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


ZICHICHI                                      CIVIL ACTION


VERSUS                                        NO: 07-2774


JEFFERSON AMBULATORY SURGERY                  SECTION: "R"(5)
CENTER, LLC ET AL.


## ORDER AND REASONS

Before the Court is defendants' motion to dismiss for improper venue, or in the alternative, motion for summary judgment.[1]  The Court GRANTS IN PART and DENIES IN PART defendants' motion to dismiss.


## I.   BACKGROUND

Plaintiff, Dr. Zichichi, was a founding member of and initial investor in the Jefferson Ambulatory Surgery Center, LLC

_____

[1] Plaintiff's motions to strike defendants' answer and to dismiss defendants' counterclaim are also before the Court.  The Court addresses defendant's 12(b)(3) motion first because venue is a threshold issue.

("JASC"). (Compl. ¶ 6).  Plaintiff sued defendants, JASC, Dr. Carriere, the managing member of JASC, and Larry Verges, the administrator of JASC, for terminating his membership without cause and for attempting to deprive him of his dividends and ownership interest.

Dr. Zichichi alleges that after he was injured in a car accident he was no longer able to perform surgery.  He entered into an agreement with another physician, Dr. Shingledecker, to treat his patients. (Compl. ¶ 8-9).  Plaintiff alleges that before entering into this agreement, he sought and obtained approval from JASC and its members.  On February 5, 2007, however, defendants informed plaintiff that they had voted to terminate his membership in JASC as of March 1, 2007, allegedly because his continued membership did not comply with the safe harbor provisions of 42 CFR § 1001.952(r).  These safe harbor provisions allow surgical ambulatory centers to operate under certain conditions without violating the federal Medicare anti-kickback statute, 42 U.S.C. § 1320a-7b(b).  Plaintiff alleges that defendants themselves are in violation of 42 CFR § 1001.952(r) because they seek to alter his investment interest in JASC for the sole reason that Dr. Shingledecker's referrals are not as high as the referrals he generated for JASC. (Compl. ¶¶ 19, 26, 28).  Finally, plaintiff alleges that Dr. Carriere and

Verges breached their duties of good faith and fair dealing in conspiring to improperly terminate his ownership interest in JASC. (Compl. ¶ 32).

On February 23, 2007, plaintiff filed a petition for preliminary and permanent injunctive relief against defendants in the Twenty-Fourth Judicial District Court, Parish of Jefferson. The court denied plaintiff's motion on April 10, 2007 on the grounds that plaintiff had not shown irreparable harm because his damages could be measured by pecuniary standards.  Plaintiff then filed a motion for a new trial.  On May 3, 2007, plaintiff sued the same defendants in federal court, alleging substantially the same allegations as those included in his state court petition.

## II.  DISCUSSION

Defendants move to dismiss pursuant to Rule 12(b)(3) of the Federal Rules of Civil Procedure, arguing that a forum selection clause in the JASC operating agreement requires that any action arising out of the agreement be brought in the Twenty-Fourth Judicial District Court for the Parish of Jefferson. ("Operating Agreement" § 20.12(b), R. Doc. 17-4).  On a Rule 12(b)(3) motion to dismiss for improper venue, the court must accept as true all allegations in the complaint and resolve all conflicts in favor of the plaintiff. *Braspetro Oil Services Co. v. Modec (USA),*

*Inc.*, 2007 WL 1425851, at *2 (5th Cir. 2007).

Federal law applies to determine the enforceability of forum selection clauses in diversity cases. *Haynsworth v. The Corp.*, 121 F.3d 956, 962 (5th Cir. 1997).  Such clauses "are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972) ("*The Bremen*"); *Int'l Software Systems, Inc. v. Amplicon, Inc.*, 77 F.3d 112, 114 (5th Cir. 1996) (confirming that *The Bremen* applies in nonadmirality law cases).  The party resisting application of the forum selection clause has a "heavy burden of proof," *The Bremen*, 407 U.S. at 17, and forum selection clauses are generally enforced. *See, e.g., Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 595 (1991) (enforcing a forum selection clause in a cruise line's ticket contract).

Plaintiff contends that the forum selection clause does not apply to its claims against defendants because (1) defendants waived venue by admitting plaintiff's allegation that venue is proper in this district and by filing a counterclaim and calling upon the Court's venue of their own accord; (2) enforcement of the forum selection clause would be unjust, unreasonable and

*contra bonos mores;*[2] and (3) this lawsuit does not arise under the operating agreement because it involves federal law and Louisiana tort issues which are not governed by the operating agreement. The Court addresses these arguments as follows.

### A.    Venue

Plaintiff's complaint states in paragraph five: "Venue is proper in this district pursuant to 28 U.S.C. § 1392 because several Defendants reside in this district and because a substantial part of the acts or omissions giving rise to this claim occurred in this district." (Pl.'s Compl. ¶ 5). Defendants' answer and affirmative defenses states: "The allegations of paragraph 5 are admitted." (Defs.' Answer ¶ 5). Defendants also assert, however, the following affirmative defense:

> Venue is also not proper in this forum and this action is also subject to dismissal pursuant to the provisions of the Operating Agreement of the Limited Liability Company, specifically 20.12(b), in which plaintiff voluntarily agreed that any suit involving any dispute or matter arising under this Agreement may only be brought in the 24th Judicial District Court for the Parish of Jefferson.

(*Id.* at 2).

Pursuant to Rule 12(h) of the Federal Rules of Civil

---

[2] *Contra bonos mores* is Latin for "against good morals." Contracts *contra bonos mores* are "[o]ffensive to the conscience and to a sense of justice." BLACKS LAW DICTIONARY (8th ed. 2004).

Procedure, a defense of improper venue will be waived unless asserted in a motion filed before a responsive pleading or with specificity in the answer. *See* 5A Wright & Miller § 1352 at 273-74 ("If defendant interposes a pre-answer motion that fails to object to venue or absent a pre-answer motion, does not assert his venue objection with specificity in his answer, he effectively has waived his right to obtain a dismissal on the ground of lack of venue.").  The purpose of Rule 12(h) is to ensure that objections to venue are made at the earliest possible opportunity. *See* 5A Wright & Miller § 1390 at 741.

     The Court finds that defendants have not waived their defense of improper venue.  While defendants have admitted that they reside in this district and a substantial part of the acts or omissions giving rise to this claim occurred in this district, they have timely raised an objection to venue based on the forum selection clause by raising it in their answer and affirmative defenses.  Unlike the cases cited by plaintiff, defendants raised their venue challenge in their first responsive pleading - their answer and affirmative defenses. *Cf. Tri-State Employment Servs., Inc. v. Mountbatten Sur. Co., Inc.*, 295 F.3d 256 (2d Cir. 2002) (forum selection clause waived where defendant failed to raise any challenge to venue in a pre-answer motion or responsive pleading and represented to the Court that it was the proper

forum); *Krape v. PDK Labs Inc.*, 194 F.R.D. 82, 86 (S.D.N.Y. 1999) (party failed to timely challenge venue when it did not challenge it in a pre-answer motion or responsive pleading and for two years represented to the court that it was the proper forum).

Although plaintiff contends that defendants have provided "no legal or factual basis as to why this Honorable Court is an improper venue for this controversy," (R. Doc. 33 at 2), plaintiff waived his right to bring suits arising out of the operating agreement when he signed a contract with a forum selection clause mandating a state forum.  The Fifth Circuit has held that dismissal of a case for improper venue in reliance on a forum selection clause is appropriate, even where personal jurisdiction exists and venue is otherwise proper. *Int'l Software Systems*, 77 F.3d at 113-115.

With respect to defendants' decision to file a counterclaim in federal court, plaintiff has conceded that a defendant generally does not waive its Rule 12(b) jurisdictional defenses by filing a counterclaim, therefore the Court does not address this argument. *See Bayou Steel Corp. v. M/V Amstelvoorn*, 809 F.2d 1147, 1149 (5th Cir. 1987) (holding that "the filing of a counterclaim .... does not operate as a waiver of an objection to jurisdiction).

**B.   Enforcement of Forum Selection Clause**

Plaintiff contends that enforcement of the forum selection clause would be unjust, unreasonable, and *contra bonos mores*.  A forum selection clause may be considered unreasonable if:

> (1) the incorporation of the forum selection clause into the agreement was the product of fraud or overreaching; (2) the party seeking to escape enforcement "will for all practical purposes be deprived of his day in court" because of the grave inconvenience or unfairness of the selected forum; (3) the fundamental unfairness of the chosen law will deprive the plaintiff of a remedy; or (4) enforcement of the forum selection clause would contravene a strong public policy of the forum state.

*Haynsworth*, 121 F.3d at 963.  Plaintiff contends that the forum selection clause will prevent him from having access to a federal forum, which is granted him by federal law.  The Court finds this argument wholly without merit.  Plaintiff voluntarily entered into a contract with a mandatory forum selection clause that requires all causes of action arising out of the agreement to be brought in state court.  Further, plaintiff has not met any of the above tests for showing that the forum selection clause is unreasonable.  Plaintiff has made no allegations that the contract as a whole is invalid, that application of Louisiana law will deprive him of a remedy, or that enforcement of the forum selection clause would contravene a strong public policy of the forum state.  Although plaintiff has alleged that it would contravene federal law to require plaintiff to bring his case in

8

state court, he has not made any arguments that Louisiana, the forum state, has a public policy against forum selection clauses. Finally, plaintiff himself already brought this case in state court, therefore he cannot seriously contend that dismissal will deprive him of his day in court.

Plaintiff also states that the Court should not enforce the forum selection clause because his federal anti-kickback allegations should be tried in federal court.  The Court finds that this argument is actually about the scope of the forum selection clause and addresses it below.

### C.   Scope of the Forum Selection Clause

Plaintiff contends that this controversy does not arise under the operating agreement because it involves federal law and Louisiana tort issues which are not governed by the operating agreement.  The JASC operating agreement provides in relevant part:

> Any suit involving any dispute or matter arising under this Agreement may only be brought in the Twenty-Fourth Judicial District for the Parish of Jefferson.  All members hereby consent to the exercise of personal jurisdiction by any such court with respect to any proceeding.

Section 20.12(b).  By entering into a contract with this forum selection clause, plaintiff waived his right to file *any* suit involving *any* dispute or matter arising under the agreement in any court other than the Twenty-Fourth Judicial District Court

for the Parish of Jefferson. *See, e.g., City of New Orleans v. Municipal Admin. Servs., Inc.*, 376 F.3d 501, 504 (5th Cir. 2004) ("A party may waive its rights ... by establishing an exclusive venue within the contract."); *Dorsey v. Northern Life Ins. Co.*, 2004 WL 2496214, at *3 (E.D. La. 2004) ("Where venue is specified in a forum selection clause with mandatory or obligatory language, the clause will be enforced.").  Plaintiff contends that the words "arising under" limit this forum-selection clause and that his state law tort claims and federal statutory claims do not arise out of the agreement.

The Second Circuit recently held that a court should examine the substance of a plaintiff's claims, "shorn of their labels," to ascertain the applicability of a contractual provision to the claims. *Phillips v. Audio Active Ltd.*, 494 F.3d 378, 388 (2d Cir. 2007).  The Court further noted that to "arise out of" means "to originate from a specified source, and generally indicates a causal connection." *Id.* at 389 (quoting *Coregis Ins. Co. v. Am. Health Found., Inc.*, 241 F.3d 123, 128 (2d Cir. 2001)); *see also Braspetro*, *supra*, at *3.  Plaintiff's complaint does not include separate causes of action, but the Court finds that plaintiff's allegations fall into three categories: breach of contract claims, tort claims, and allegations that federal statutory law provides a defense to termination.

1.    **Breach of Contract Claims**

Plaintiff's breach of contract claims clearly arise under the operating agreement.  These claims require interpretation of the operating agreement and the rights of the partes pursuant to the agreement. *See, e.g., Peters v. Milton Hall Surgical Associates, L.L.C.*, 2003 WL 22174274 (E.D. La. 2003) (finding that operating agreement's forum selection clause applied to breach of contract claim).  Plaintiff claims that defendants terminated his membership and deprived him of his dividends in breach of his contractual rights. (*See, e.g.,* Compl. ¶ 19) ("Defendants are violating the terms of the membership agreement relating to the termination of membership 'for cause,' and are illegally seeking to deprive Dr. Zichichi of both his dividends and the value of his ownership interest.").  The operating agreement containing the forum selection clause is the source of plaintiff's alleged membership and dividend rights, defendants' alleged duties, and plaintiff's asserted injury.

2.    **Tort Claims**

Plaintiff alleges that Dr. Carriere and Verges committed the torts of breach of fiduciary duty, fraud, conspiracy, conversion, and defamation. (Compl. ¶ 10).  The Court must determine whether plaintiff's tort claims arise under the operating agreement. *See, e.g., Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd.*, 709

11

F.2d 190 (3d Cir. 1983) (policies justifying application of forum selection clauses in contract cases are equally applicable to tort causes of action arising out of that contractual relationship).

The Judge who denied plaintiff's state court petition for preliminary injunction noted, "[t]his case is essentially a contract dispute centering on the plaintiff's allegation of wrongful termination under the terms of the business operating agreement." (R. Doc. 17-5 at 2).  This Court agrees.  Some of plaintiff's tort causes of action, once they are "shorn of their labels," could just as easily have been brought as breach of contract claims, and therefore also arise out of the operating agreement. *See, e.g., Abbot Labs. v. Takeda Pharm. Co.*, 476 F.3d 421, 424 (7th Cir. 2007) (rejecting plaintiff's argument that breach of fiduciary duty claim arising under Delaware tort law did not arise from the contract).

Plaintiff's breach of fiduciary duty claims, as plaintiff himself recognizes, arise out of the operating agreement. (Compl. ¶ 32) ("As managers, administrators and agents of JASC, Defendants Verges and Carriere owed Dr. Zichichi a duty of good faith and fair dealing.").[3]  In *Coffman v. Provost Umphrey Law*

_____

[3] Plaintiff's claims based on La. Civ. Code art. 1997 similarly require plaintiff to show some obligation the

*Firm*, 161 F. Supp. 2d 720 (E.D. Tex. 2001), *aff'd*, 33 Fed. Appx.
705 (5th Cir. 2002), the court considered whether plaintiff's
breach of contract, breach of fiduciary duty, and statutory law
claims were subject to binding arbitration.[4]  The parties'
partnership agreement required the parties to arbitrate any
dispute or claim "arising under" the agreement. *Id.* at 723.  The
court held that plaintiff's breach of fiduciary duty claims were,
in essence, claims based on breach of contract and therefore
arose out of the partnership agreement.  It was the partnership
agreement that set forth the rights, duties, and obligations of
the partners, and those "rights, duties, and obligations [would]
have to be referred to and constructed in determining whether any
fiduciary duty was breached." *Id*. at 731-32.

   Plaintiff's fraud and conspiracy allegations are
interrelated, and include the following:

•   Dr. Carriere and Verges committed fraud by lying to him and

---

individual defendants owed him. *See* La. Civ. Code art. 1997 cmt.
b ("An obligor is in bad faith if he intentionally and
maliciously fails to perform his obligation.").

   [4] Plaintiff has cited a number of arbitration cases which
differentiate between narrow and expansive arbitration clauses.
The Court also finds the arbitration cases helpful.  Arbitration
cases, however, are decided under a different standard.  There is
a strong federal policy favoring arbitration, therefore when the
scope of an arbitration agreement is reasonably in doubt, courts
should construe the clause in favor of arbitration. *See Coffman*,
161 F. Supp. at 724.

other members about the justification for terminating Dr. Zichichi's membership interest "in an abject breach of their fiduciary duties to JASC, Dr. Zichichi and the other members." (Compl. ¶ 2 n.2).

- Defendants "conspired to violate Federal anti-kickback rules in an attempt to improperly terminate Dr. Zichichi's ownership interest in JASC.  Defendants Verges and Carriere took steps to further, aid and abet both the principal illegal conduct and the conspiracy by repeatedly promising Dr. Zichichi that the transfer of his practice to Dr. Shingledecker would not violate the terms of the JASC operating agreement." (Compl. ¶ 27).

- "Defendants Verges and Carriere also took steps to further defraud Dr. Zichichi, aid and abet the conspiracy by convening a secret meeting of JASC's members (in violation of the operating agreement and the legal duties of Defendants Verges and Carriere to Dr. Zichichi as a member of JASC), and making misrepresentations to the other JASC members about the legality of the arrangement between Dr. Zichichi and Dr. Shingledecker." (Compl. ¶ 31).

- "In conspiring to improperly terminate Dr. Zichichi's ownership interest in JASC, Defendants Verges and Carriere violated that duty [of good faith and fair dealing]." (Compl. ¶ 32).

Plaintiff basically alleges that defendants, through fraud and conspiracy, wrongfully deprived plaintiff of his rights under the operating agreement.  The Court finds that these claims also arise out of the operating agreement.  The Court reads plaintiff's complaint to allege that defendants conspired to terminate plaintiff's membership benefits and dividend rights, to increase their own profit.  To state a claim for conspiracy, plaintiff is required to establish a meeting of the minds or collusion between the parties for the purpose of committing

14

wrongdoing. *Thomas v. North 40 Land Development, Inc*., 894 So.2d 1160, *1174 (La. App. 2005); La. Civ. Code art 2324(A) ("[h]e who conspires with another person to commit an intentional or willful act is answerable, in solido, with that person, for the damage caused by such act."). Plaintiff will necessarily have to refer to the contract as the source of his membership rights in order to show that defendants wrongfully deprived him of those rights before he can prove they conspired to do so.

The same is true for the fraud claims. Under Louisiana law, to state a claim for fraudulent misrepresentation, a plaintiff must allege "(1) a misrepresentation of material fact, (2) made with the intent to deceive, (3) causing justifiable reliance with resulting injury." *Systems Eng'g & Sec., Inc. v. Science & Eng'g Associates, Inc*., 962 So. 2d 1089, 1091 (La. App. 2007). Plaintiff cannot prove resulting injury without showing those rights he had pursuant to the contract. The Court finds that plaintiff's fraud and conspiracy claims are so interwoven with his rights under the contract that they necessarily arise out of the operating agreement. *See, e.g., Coffman*, 161 F. Supp. 2d at 731.

Plaintiff's conversion claim will also require him to assert his membership and dividend rights arising out of the operating agreement. (Compl. ¶ 35) ("Defendants are also liable to Dr.

Zichichi for all other torts committed, including but not limited
to fraud and conversion"). "A conversion consists of an act in
derogation of the plaintiffs' possessory rights, and any wrongful
exercise or assumption of authority over another's goods,
depriving him of the possession, permanently or for an indefinite
time, is a conversion." *Jefferson v. Crowell*, 956 So.2d 746, 749
(La. App. 2007). In order to prevail on this claim, plaintiff
will have to establish his rights arising out of the agreement,
and therefore this tort claim is subject to the forum selection
clause.

Plaintiff's defamation claim does not arise out of the
operating agreement. Plaintiff alleges that defendants Dr.
Carriere and Verges "besmirch[ed] his good name and character" by
telling other JASC members that the arrangement between plaintiff
and Dr. Shingledecker violated federal regulations. (Compl. ¶¶
31, 35). To establish a cause of action for defamation,
plaintiff must show: (1) defamatory words; (2) publication; (3)
falsity; (4) malice; and (5) injury. *Chapman v. Ebeling*, 945
So.2d 222, 228 (La. App. 2006). Plaintiff appears to be alleging
that defendants' statements were defamatory per se, because
defendants knew they were false. (Compl. ¶ 31). *See id*. ("Words
which expressly or implicitly accuse another of criminal conduct,
or which by their very nature tend to injure one's personal or

professional reputation, are considered defamatory on their face, or defamatory per se.").  This cause of action does not originate from the operating agreement because plaintiff need not assert any rights or duties under the contract in order to assert a claim for defamation. *See, e.g., Phillips*, 494 F.3d at 391 (finding plaintiff's copyright claims did not arise out of his recording contract because he asserted no rights or duties under that contract); *cf. Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 619-21 n.7 (1985) (noting that district court found that defamation claims were not subject to arbitration clause providing for arbitration of all disputes arising out of the parties' distribution and sales agreements).

### 3.   Federal Statutory Allegations

Finally, plaintiff asserts that his federal statutory claims arise under the Medicare anti-kickback statute (Social Security Act § 1128B), 42 U.S. C. §§ 1320a-7b, and its implementing regulations, 42 C.F.R. § 1001, and therefore do not arise under the operating agreement.  Plaintiff's allegations include the following:

- "Defendants are violating 42 C.F.R. § 1001.952(r)(3)(I) which prohibits ambulatory surgery centers from altering the ownership interest of an investor based on "previous or expected volume of referrals, services furnished, or the amount of business otherwise generated from that investor to the entity." (Compl. ¶ 20) (emphasis removed).

17

- "The terms of JASCs membership agreement that provide a basis for terminating Dr. Zichichi's membership interest in JASC, as applied to Dr. Zichichi in this instance, violate 42 C.F.R. § 1001.952(r) ..." (Compl. ¶ 41(c)).

Plaintiff does not have a cause of action under the Medicare anti-kickback statute because there is no private right of action under 42 U.S.C. § 1320a-7b(b). *See West Allis Memorial Hosp., Inc. v. Bowen*, 852 F.2d 251 (7th Cir. 1988) ("neither the structure of [the Anti-Kickback Act] nor its legislative history suggests that Congress intended to provide a private remedy"); *Donovan v. Rothman*, 106 F. Supp. 2d 513, 516 (S.D.N.Y. 2000) (finding "no private cause of action to redress violations of the federal anti-kickback statute"); *U.S. ex rel. Barrett v. Columbia/HCA Healthcare Corp.*, 251 F. Supp. 2d 28, 37 (D.D.C. 2003) (same).  Indeed, plaintiff does not assert a right to damages under the federal regulations.  Plaintiff is in effect making these federal law allegations as a defense to defendants' actions taken under the terms of the operating agreement.  Although plaintiff's defense might involve federal law, the dispute regarding his membership rights still arises under the contract.

### 4.   Severance and Abstention

Where a Court finds that some claims are subject to a forum selection clause and some are not, it should dismiss or transfer

the claims that should properly be brought in a contractually agreed-upon forum, but maintain jurisdiction over the others. *See, e.g., Phillips*, 494 F.3d at 393 ("our twin commitments to upholding forum selection clauses where these are found to apply and deferring to a plaintiff's proper choice of forum constrain us in the present context to treat Phillips' claims separately"); *cf. Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 221 (1985) (holding that district courts are required to compel arbitration of claims subject to arbitration clause "even if the result is 'piecemeal' litigation").  The Court therefore dismisses without prejudice plaintiff's breach of contract claims, all of plaintiff's tort claims except the defamation claim, and plaintiff's federal statutory claims.[5]

Although the Court maintains jurisdiction over plaintiff's defamation claim, it will stay the case until the state court proceedings are resolved. *See Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (detailing the circumstances under which "a district court may abstain from exercising jurisdiction over a case when there is a concurrent state proceeding"); *see also* Pl.'s Petition ¶ 17, R. Doc. 17-3

---

[5]   The Court must dismiss these claims because it has no authority under 28 U.S.C. § 1404 to transfer this case to a state forum.

19

(plaintiff asserting defamation claim in state court petition).
Under *Colorado River*, the Court should consider six factors in
deciding whether exceptional circumstances exist that permit the
court to decline jurisdiction until parallel state court
proceedings are finished: (1) the assumption by either court of
jurisdiction over a *res*, (2) the relative inconvenience of the
forums, (3) the avoidance of piecemeal litigation, (4) the order
in which jurisdiction was obtained by the concurrent forums, (5)
to what extent federal law provides the rules of decision on the
merits, and (6) the adequacy of the state proceedings in
protecting the rights of the party invoking federal jurisdiction.
*See Steward v. Western Heritage Ins. Co.*, 438 F.3d 488, 491 (5th
Cir. 2006).

The first two factors support the Court's exercise of
federal jurisdiction. *Id.* at 492 (when neither court has assumed
jurisdiction over any *res* in the case and when both courts are in
the same geographic location, the first two factors support the
court's exercise of federal jurisdiction).  The other four
factors, however, all weigh in favor of abstention.  The Court
finds that abstention will avoid piecemeal litigation, that the
state court first obtained jurisdiction over the defamation
claim, that federal law does not provide the rule of decision for
the state law tort claim, and, finally, that the state

proceedings will adequately protect the plaintiff's rights. Defamation is a state law claim and plaintiff has already asserted it in state court.  Because the court has dismissed the rest of plaintiff's claims on grounds of improper venue, staying the defamation claim until the parallel state case is resolved will best promote "(w)ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation." *Colorado River*, 424 U.S. at 817.

**IV.   CONCLUSION**

For the foregoing reasons, defendants' motion to dismiss for improper venue is GRANTED IN PART and DENIED IN PART.  To the extent the Court retains jurisdiction over plaintiff's claims, the matter is stayed and administratively closed pending the resolution of the state court litigation.

New Orleans, Louisiana, this  7th  day of November, 2007.

_Sarah Vance_

SARAH S. VANCE
UNITED STATES DISTRICT COURT

21