UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA


ZICHICHI                                    CIVIL ACTION


VERSUS                                      NO: 07-2774


JEFFERSON AMBULATORY SURGERY                SECTION: "R"(5)
CENTER, LLC ET AL.



ORDER AND REASONS

Before the Court is plaintiff's motion to disqualify
defendants' counsel, Kurt Blankenship, and his law firm, Blue
Williams, LLP. (R. Doc. 48.)  For the following reasons, the
Court DENIES the motion.


I. BACKGROUND

Plaintiff, Dr. Zichichi, was a founding member of and
initial investor in the Jefferson Ambulatory Surgery Center, LLC
("JASC").  In February of 2007, plaintiff filed a petition for
preliminary and permanent injunctive relief against the JASC in
state court.  Mr. Blankenship enrolled as counsel in the state
court proceedings.  The state court denied plaintiff's motion for
injunctive relief on April 10, 2007.  Plaintiff then filed a
motion for a new trial.  JASC, represented by Mr. Blankenship,
contested the motion.  During April of 2007, Mr. Blankenship also
represented JASC in a meditation with Dr. Zichichi.  On May 3,

2007, plaintiff filed the current action for damages in federal court, additionally naming as defendants Dr. Carriere, the managing member of JASC, and Larry Verges, the administrator of JASC.  Mr. Blankenship represents all of the defendants in the federal action.

On April 1, 2008, more than a year later, plaintiff moved to disqualify Mr. Blankenship and his law firm.  According to Dr. Zichichi, the defendant and its members secretly voted to terminate his membership in JASC in January of 2007. (Zichichi Aff., R. Doc. 58-2, ¶ 14.)  At some point shortly thereafter, Dr. Zichichi became aware of the members' efforts to terminate his membership and that there was an adverse relationship between him and JASC. (*Id*. ¶ 20) ("Defendant, through its members, sent me a letter on 25 January 2007 informing me that the other members had voted to terminate my membership in JASC as of 1 March 2007 ...")[1]  Plaintiff then spoke with Mr. Smith, a former Manager/Administrator for JASC, and obtained the name of JASC's counsel, Mr. Blankenship. (*See* Smith Aff., R. Doc. 67-10, ¶¶ 3, 7.)  Dr. Zichichi called Mr. Blankenship and they spoke for about fifteen minutes.  Mr. Blankenship had never met Dr. Zichichi, but spoke with him as if he were speaking with a pro se litigant.

---

[1] In a later declaration, Dr. Zichichi attests that he learned about the attempt to terminate his membership during a phone call with Mr. Smith that took place on January 25, 2007. (Zichichi Dec., R. Doc. 85-5 ¶ 2.)

After that conversation, Mr. Blankenship did not return any of Dr. Zichichi's phone calls or speak with him again.  The Court heard oral argument and took testimony on Dr. Zichichi's motion to disqualify Mr. Blankenship on June 18, 2008, and rules as follows.

## II.  Discussion

The Fifth Circuit has made clear that "[m]otions to disqualify are substantive motions affecting the rights of the parties and are determined by applying standards developed under federal law." *In re American Airlines, Inc.*, 972 F.2d 605, 610 (5th Cir. 1992) (*citing In re Dresser Indus.*, 972 F.2d 540, 543 (5th Cir. 1992); *see also Green v. Administrators of the Tulane Educational Fund*, 1998 WL 24424 (E.D. La. 1998).  Although federal courts may adopt state or ABA rules as their ethical standards, whether and how these rules apply are questions of federal law. *See American Airlines*, 972 F.2d at 610.  The ethical canons that are relevant to this Court's opinion include (1) the local rules for the Eastern District of Louisiana, (2) the ABA's Model Rules of Professional Conduct, (3) the ABA's Model Code of Professional Responsibility, and (4) the Louisiana State rules of conduct. *See Horaist v. Doctor's Hospital of Opelousas*, 255 F.3d 261, 266 (5th Cir. 2001); *FDIC v. United States Fire Ins. Co.*, 50 F.3d 1304, 1311-12 (5th Cir. 1995).

The United States District Court for the Eastern District of Louisiana has adopted the Rules of Professional Conduct adopted by the Supreme Court of the State of Louisiana for its Rules of Disciplinary Enforcement. *See* LR 83.2.10E.  The following Louisiana Rules of Professional Conduct are relevant to the present motion:

Rule 1.9 Conflict of Interest: Former Client
A lawyer who has formerly represented a client in a matter shall not thereafter:

(a)   Represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation; or

(b)   Use information relating to the representation to the disadvantage of the former client except as Rule 1.6 would permit with respect to a client or when the information has become generally known.

Rule 1.10. Imputed disqualification: General rule

(a)   While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7, 1.8(c), 1.9, or 2.2.

(b)   When a lawyer becomes associated with a firm, the firm may not knowingly represent a person in the same or a substantially related matter in which that lawyer, or a firm with which the lawyer was associated, had previously represented a client whose interests are materially adverse to that person and about whom the lawyer had acquired information protected by Rules 1.6 and 1.9(b) that is material to the matter.

Rule 1.13(f). Organization as Client
In dealing with an organization's directors, officers, employees, members, shareholders or other constituents, a lawyer shall explain the identity of the client when the lawyer knows or reasonably should know that the

4

organization's interests are adverse to those of the constituents with whom the lawyer is dealing.

Rule 4.3. Dealing with Unrepresented Person

In dealing on behalf of a client with a person who is not represented by counsel, a lawyer shall not state or imply that the lawyer is disinterested. When the lawyer knows or reasonably should know that the unrepresented person misunderstands the lawyer's role in a matter, the lawyer shall make reasonable efforts to correct the misunderstanding. The lawyer shall not give legal advice to an unrepresented person, other than the advice to secure counsel, if the lawyer knows or reasonably should know that the interests of such a person are or have a reasonable possibility of being in conflict with the interests of the client.

These rules have substantially similar counterparts in the ABA Model Rules. *See* MODEL RULES OF PROF'L CONDUCT R. 1.9, 1.10, 1.13, 4.3. In addition to these ethical standards, the Court also considers the public interest and the litigants' rights. *See Dresser*, 972 F.2d at 543.

Plaintiff contends that Mr. Blankenship should be disqualified because during their phone conversation Mr. Blankenship and Dr. Zichichi formed an attorney-client relationship. In particular, Dr. Zichichi contends that he sought legal advice from Mr. Blankenship by asking Mr. Blankenship whether he, Dr. Zichichi, was in compliance with federal anti-kickback regulations, and, if not, what steps he would need to take to be reinstated as a member of JASC. Plaintiff asserts that Mr. Blankenship provided plaintiff legal advice when he responded to these questions. Plaintiff further

5

states that he made confidential statements to Mr. Blankenship regarding improper motives of Dr. Carriere and Mr. Verges, other defendants in this action.  Mr. Blankenship contends that he took steps to advise Dr. Zichichi that he represented JASC, an adverse party, and further told Dr. Zichichi that he should obtain counsel.  He also denies giving Dr. Zichichi any legal advice.

**A.   Rule 1.9(a)**

In the Fifth Circuit, the "substantial relationship" test governs disqualification under Rule 1.9(a) based on a former representation.  The Fifth Circuit summarized the elements of this test as follows:

> A party seeking to disqualify opposing counsel on the ground of a former representation must establish two elements: (1) an actual attorney-client relationship between the moving party and the attorney he seeks to disqualify and (2) a substantial relationship between the subject matter of the former and present representations.

*American Airlines*, 972 F.2d at 614 (*citing Johnston v. Harris County Flood Control Dist.*, 869 F.2d 1565, 1569 (5th Cir. 1989)). The test is "categorical in requiring disqualification once a substantial relationship between past and current representations is established." *Id.*  The substantial relationship test is not to be applied, however, in a "mechanical" way so as to forever foreclose a lawyer from representing an interest adverse to a former client. *Id*. at 614.  There are two underlying concerns of the substantial relationship test: "the duty to preserve

6

confidences and the duty of loyalty to a former client." *Id.* at 618.

The Court must first consider whether there was an actual attorney-client relationship between plaintiff and Mr. Blankenship as a result of the telephone conversation.  In *In re Austin*, 943 So.2d 341 (La. 2006), the Supreme Court of Louisiana applied the test in the Restatement (Third) of the Law Governing Lawyers to determine if an attorney-client relationship existed. *Id.* at 347.  According to the Restatement (Third) of the Law Governing Lawyers, a relationship of client and lawyer arises when:

> (1) a person manifests to a lawyer the person's intent that the lawyer provide legal services for the person; and either
>> (a)  the lawyer manifests to the person consent to do so; or
>> (b)  the lawyer fails to manifest lack of consent to do so, and the lawyer knows or reasonably should know that the person reasonably relies on the lawyer to provide the services; or
> (2) a tribunal with power to do so appoints the lawyer to provide the services.

RESTATEMENT (THIRD) OF LAW GOVERNING LAWYERS § 14 (2000).

The Court does not find that plaintiff and Mr. Blankenship formed an attorney-client relationship during the telephone conversation in January of 2007.  There is no evidence that Dr. Zichichi manifested an intent that Mr. Blankenship provide legal services for him, that Mr. Blankenship consented to do so, or that Mr. Blankenship had a reasonable basis to believe that

plaintiff was relying on him for legal services. *See Williams v. Roberts*, 931 So.2d 1217, 1220-21 (La. App. 3d Cir. 2006) ("even though whether an attorney-client relationship exists turns largely on one's subjective belief that it does, a person's subjective belief that an attorney represents him must be reasonable under the circumstances.").  Although both individuals have submitted conflicting affidavits about what took place during the conversation, the Court has considered all of the affidavits and declarations, as well as the testimony of Mr. Blankenship, and finds Mr. Blankenship's statements regarding substance and nature of the conversation more credible.

It would be unreasonable for Dr. Zichichi to think that he was establishing an attorney-client relationship with an adverse party's lawyer.  Dr. Zichichi states that on February 14 or 15, 2007, he "called JASC's general counsel, Kurt Blankenship." (Zichichi Aff. ¶ 21.)[2]  Therefore by Dr. Zichichi's own admission, he was aware that he was speaking with the company's lawyer, not his own lawyer.  At this time, Dr. Zichichi was also already aware of an adverse relationship between himself and JASC, specifically that the other members were planning to terminate his membership. (*Id.* ¶¶ 20-21; Zichichi Dec. ¶ 2.)  In Mr. Smith's affidavit, he states that he informed plaintiff that

---

[2] In his supplemental declaration, Dr. Zichichi corrects this statement and clarifies that the conversation took place on January 25, 2007. (Zichichi Dec. ¶ 1.)

Mr. Blankenship was JASC's attorney and that Mr. Blankenship had provided legal advice to JASC regarding Dr. Zichichi's termination.[3] (Smith Aff. ¶¶ 7-8.)  Based on this evidence, the Court finds that plaintiff was aware when he spoke with Mr. Blankenship that Mr. Blankenship represented JASC, an adverse entity.

Mr. Blankenship also never manifested consent to be Dr. Zichichi's attorney.  He states in his affidavit, "It is my recollection that at the very start of my brief conversation with Dr. Zichichi, I confirmed with him that he did not have counsel and that he was calling me as the company's attorney." (Blankenship Aff., R. Doc. 67-11, ¶ 6.)  Mr. Blankenship avers that he was not providing legal advice to plaintiff, but was rather explaining, as the company's attorney, why JASC had terminated Dr. Zichichi's membership. (*Id.* ¶¶ 9, 13.)  Mr. Blankenship was under the impression that plaintiff was in the process of obtaining his own attorney, not that he was looking to Mr. Blankenship for legal services.  In a letter Mr. Blankenship sent to plaintiff's counsel dated April 12, 2007, about one and a half months after the telephone conversation, Mr. Blankenship writes that Dr. Zichichi told him during their conversation that

---

[3]  Although plaintiff contends that Mr. Smith plans to recant his affidavit because it is inaccurate, the Court cannot ignore the affidavit Mr. Smith signed and had notarized based on plaintiff's assertions that it is inaccurate.

plaintiff was retaining an attorney. (Blankenship Letter, R. Doc.
53-3 at 2.)  Finally, there are no other indicia that the parties
were forming an attorney-client relationship, such as any
discussion of Mr. Blankenship's rates, the services Dr. Zichichi
was seeking, or what the next steps would be.  Rather, according
to Mr. Blankenship's testimony, he confirmed with Dr. Zichichi
that he was unrepresented, made sure Dr. Zichichi was aware that
Mr. Blankenship represented JASC, and then plaintiff argued his
position and Mr. Blankenship explained his client's position.
Finally, Mr. Blankenship told Dr. Zichichi that he should obtain
counsel.  Based on these facts, no attorney-client relationship
arose out of the telephone call.

Because the Court does not find that Mr. Blankenship and Dr.
Zichichi formed an attorney-client relationship, there is no
basis for disqualifying Mr. Blankenship pursuant to Rule 1.9 of
the Louisiana Rules of Professional Conduct.

**B.   Rule 1.13**

Rule 1.13(f) provides that when an attorney deals with an
organization's directors, officers, employees, members,
shareholders or other constituents, "a lawyer shall explain the
identity of the client when the lawyer knows or reasonably should
know that the organization's interests are adverse to those of
the constituents with whom the lawyer is dealing."  At the
hearing, Mr. Blankenship testified that after Dr. Zichichi

10

contacted him, he clearly advised plaintiff that he represented JASC and further advised him to seek independent counsel. (Blankenship Test.; *see also* Def.'s Opp'n, R. Doc. 53, at 3; Blankenship Aff. ¶ 6) (**"**It is my recollection that at the very start of my brief conversation with Dr. Zichichi, I confirmed with him that he did not have counsel and that he was calling me as the company's attorney**."**)  Further, as discussed above, plaintiff was aware that Mr. Blankenship represented the corporation, JASC.  Plaintiff was also aware before he spoke with Mr. Blankenship, either because he had received a letter, or through his phone call with Mr. Smith, that he had an adverse relationship to JASC.

Although Dr. Zichichi states in a declaration signed on June 13, 2008 that "at no time during my 14.5 minute telephone conversation ... was I ever advised that Mr. Blankenship represented JASC adverse to my membership interest," this statement is contradicted by the evidence mentioned above, as well as Mr. Blankenship's letter sent in April of 2007 in which he recalls that plaintiff told him he was in the process of obtaining a lawyer. (Blankenship Letter at 2.) ("[Dr. Zichichi] then told me that he either had or would shortly have an opinion from another attorney that his remaining in the group would not jeopardize compliance with the safe harbor regulations.") Plaintiff's comments to Mr. Blankenship that he was planning to

hire a lawyer show that he was aware that he was speaking with an attorney representing a party with adverse interests. Accordingly, the Court does not find that Mr. Blankenship violated Rule 1.13.

### C.    Rule 4.3

Plaintiff has also questioned whether it was appropriate for Mr. Blankenship to communicate with plaintiff, when he was unrepresented, regarding the termination of his JASC membership. The Louisiana Rules of Professional Conduct require that a lawyer, when dealing with an unrepresented person, "shall not give legal advice ... other than advice to secure counsel, if the lawyer knows or reasonably should know that the interests of such a person are or have a reasonable possibility of being in conflict with the interests of the client." *See* Louisiana Rule of Professional Conduct 4.3; MODEL RULE OF PROF'L CONDUCT 4.3; MODEL CODE OF PROF'L RESPONSIBILITY DR 7-104(A)(2) (stating that a lawyer shall not "[g]ive advice to a person who is not represented by a lawyer, other than the advice to secure counsel").  Not every communication between a lawyer and an unrepresented person constitutes "advice." *See, e.g., First Nat'l Bank of St. Bernard v. Assavedo*, 764 So.2d 162 (La. App. 2000) (woman served with citation and petition by bank suing her family on promissory noted called bank's law firm and was told to have her son call bank; this was not "advice" within meaning of Rule 4.3.).

12

Although Mr. Blankenship informed Dr. Zichichi of his client's position on plaintiff's membership interest in JASC, the Court does not find that by doing so Mr. Blankenship was giving plaintiff legal advice in violation of Rule 4.3.   Comment 2 of the ABA Annotated Model Rules of Professional Conduct provides: "So long as the lawyer has explained that the lawyer represents an adverse party and is not representing the person, the lawyer may ... explain the lawyer's own view of ... the underlying legal obligations." Ann. Mod. Rules Prof. Cond. Rule 4.3 (6th Ed. 2007).   Dr. Zichichi was aware that Mr. Blankenship represented JASC, and Dr. Zichichi's own affidavits and declarations indicate that he knew his interests were adverse to JASC before he called Mr. Blankenship on January 25, 2007.   Furthermore, Mr. Blankenship did nothing more than give his opinion of the underlying legal obligations and told plaintiff to obtain counsel.

This telephone conversation does not raise the same Rule 4.3 concerns as other cases where the Louisiana Supreme Court has found that counsel have violated the Rule.   For example, in *Louisiana State Bar Ass'n v. Harrington*, 585 So.2d 514 (La. 1991), the Court found that an attorney violated Rule 4.3 when he barged into an unrepresented individual's home without permission, confronted her in a loud voice, and did not initially identify himself or explain his role as an attorney representing

13

an adverse party. *Id.* at 517. Here, it was Dr. Zichichi that initiated the contact with Mr. Blankenship, fully aware that he represented JASC.

Finally, the Court notes that at least one other Circuit has found that "a violation of professional ethics does not in any event automatically result in disqualification of counsel." *W.T. Grant Co. v. Haines*, 531 F.2d 671, 677 (2d Cir. 1976) (affirming district court's refusal to disqualify counsel in antitrust action brought by corporation against defendants, including a former employee, after employee moved to disqualify corporation's law firm for allegedly improper communications with the employee while he was unrepresented by counsel).

**D. Disqualification Under Rule 1.10**

Because the Court finds that there is no reason to disqualify Mr. Blankenship, the issue of Blue Williams' imputed disqualification is moot.

**E. Waiver**

The Court also denies plaintiff's motion because it finds that plaintiff has waived his right to move to disqualify Mr. Blankenship by waiting a year to object to Mr. Blankenship's representation of the defendants. The Ninth Circuit has found that "[i]t is well settled that a former client who is entitled to object to an attorney representing an opposing party on the ground of conflict of interest but who knowingly refrains from

14

asserting it promptly is deemed to have waived that right." *Trust Corp. of Montana v. Piper Aircraft Corp.*, 701 F.2d 85, 87 (9th Cir. 1983) (finding waiver where disqualification not raised for more than two and a half years after notice of representation, and raised on the eve of trial); *see also In re Yarn Processing Patent Validity Litig.*, 530 F.2d 83, 89-90 (5th Cir. 1976) (former clients may expressly or impliedly waive objection and consent to adverse representation); *Central Milk Producers Co-op. v. Sentry Food Stores, Inc.*, 573 F.2d 988, 992 (8th Cir. 1978) (waiver found where disqualification motion brought more than two years after notice of representation); *Employers Ins. of Wausau v. Albert D. Seeno Constr. Co.*, 692 F.Supp. 1150, 1165-1166 (N.D. Cal. 1988) (waiver where disqualification motion not made until well over a year after the moving party became aware of conflict); *cf. Islander East Rental Program v. Ferguson*, 917 F.Supp. 504, 507-508 (S.D. Tex. 1996) (no waiver where conflict raised just four months after action was initiated).

When considering an equitable defense based on waiver, the Court considers when the movant learned of the conflict, why the delay occurred, whether the motion was delayed for tactical reasons, and whether disqualification would result in prejudice to the nonmoving party. *See, e.g., Employers Ins. of Wausau*, 692 F.Supp. at 1165. Here, counsel for plaintiff has been aware of the basis of the motion to disqualify since at least April 5,

15

2007, when he wrote to defense counsel with his concerns. Plaintiff's counsel offers no reasons for delaying over a year in raising this issue other than that he "hoped Mr. Blankenship would voluntarily withdraw from representation." During that year period Mr. Blankenship represented JASC during a preliminary injunction motion and motion for new trial in state court, a mediation proceeding, as well as a motion to dismiss in federal court. Defendants would be prejudiced by losing their counsel, who is familiar with JASC and has been handling the litigation between plaintiff and JASC since its inception. Accordingly, the Court finds that plaintiff has waived his objections to Mr. Blankenship's representation of the defendants.


**III. CONCLUSION**

For the foregoing reasons, the Court DENIES plaintiff's motion to disqualify Kurt Blankenship and his law firm, Blue Williams, LLP.


New Orleans, Louisiana, this 22nd day of July, 2008.

SARAH S. VANCE
UNITED STATES DISTRICT COURT